UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY MAKAS,<br><br>                    Petitioner,<br><br>          vs.<br><br>HOWARD HOLANCHOCK,[1/] Director,<br>Mid-Hudson Forensic Psychiatric Center,<br><br>                    Respondent. | No. 9:02-cv-00836-JKS<br><br>MEMORANDUM DECISION |

Timothy Makas has filed a petition for habeas corpus under 28 U.S.C. § 2254.  Makas  is currently in the custody of New York Commissioner of Mental Health at the Mid-Hudson Forensic Psychiatric Center, Orange County, New York, a secure facility.

Makas  challenges his continued detention in a secure mental health facility after pleading not responsible by reason of mental disease or defect (NRRMDD) to charges arising out of the arson of real property he owned.[2/]  Makas contends that his NRRMDD plea was involuntary because he was ill informed as to a charge of Arson in the Second Degree, a class B felony.  In a related claim Makas contends that his attorney provided him ineffective assistance in advising him regarding the consequences of a NRRMDD plea.  In his petition to this Court Makas presents three grounds for relief: (1) Ineffective assistance of counsel for failure to obtain discovery material apparently related to his guilt of second-degree arson; (2) Ineffective assistance of counsel by misrepresenting that entry of an NRRMDD plea to the second-degree arson charge as opposed to entering a NRRMDD

_____

[1/] Howard Holanchock substituted for Richard Bennett as Executive Director, Mid-Hudson Forensic Psychiatric Center.  FED. R. CIV. PROC. 25(d).

[2/] The Second Circuit has recently considered the applicability of § 2254 to NRRMDD acquittees complaining of their continued detention under N.Y. CRIM. PROC. LAW § 330.20.  *See Ernst J. v. Stone,* 452 F.3d 186 (2d Cir.2006); *Francis S. v. Stone*, 221 F.3d 100 (2d Cir.2000).  The Second Circuit recognized that, strictly speaking, § 2254 and its limitations on habeas corpus only apply to those convicted of crimes and NRRMDD acquittees have not been convicted of a crime.  Nevertheless the court found sufficient similarity between a guilty plea and a NRRMDD plea to justify applying § 2254 and its limitations to such individuals. *Francis S.*, 221 F.3d at 108 n. 10.

plea to the third-degree arson charge would not matter once Makas was committed, *i.e.*, would not influence the duration of any commitment; and (3) That the facts did not fit the crime—second-degree arson—to which he entered the NRRMDD plea (implicitly involuntary plea and ineffective counsel).[3]   In order to put Makas' claims in context it is necessary to set out in some detail the procedural history of this case and the consequences that the New York Legislature imposes on NRRMDD acquittees.

The facts of the crime are summarized in the opinion of the New York Appellate Division, *People v. Makas*, 709 N.Y.S.2d  650, 651 (N.Y. App. Div.2000) (names of lessees in brackets supplied).

> Around 3:00 A.M. on May 9, 1998, defendant intentionally started a fire in a residential building he owned in the Village of Hurley, Ulster County. The building, which had just been rented to a new tenant [Furman] but was unoccupied at the time of the fire, had a covered breezeway connecting it to a second, larger residence 14 1/2 feet away. The second building was also owned by defendant and rented to other tenants [the McKeighans] who were occupying it at the time of the fire. After setting fire to the unoccupied building, defendant called 911, stating that he had set a fire and wanted the police to come and shoot him. No one was injured as a result of the fire, but the unoccupied building was severely damaged.

## I.  PROCEEDINGS TO DATE

The early proceedings in this case are also summarized in *People v. Makas*, *supra*.

 After his arrest Makas was found to be suicidal and depressed with psychotic thinking, and was determined to be incapacitated.  He was committed to a mental institution.  Makas was indicted on charges of arson in the second degree,[4] arson in the third degree,[5] and attempted arson in the

---

[3] Under New York law a defendant entering a NRRMDD plea waives the right not to incriminate himself and the court, in accepting the plea, must first determine that there is a factual basis for the plea. N.Y. CRIM. PROC. LAW § 220.15(3).  The plea establishes that the defendant is factually guilty of the offense but in effect not morally responsible.  The plea is therefore a hybrid not truly a not guilty plea but not a guilty plea either. *See Matter of Norman D.*, 818 N.E.2d 642 (N.Y.2004)

[4] N.Y. PEN. LAW § 150.15 provides: "A person is guilty of arson in the second degree when he intentionally damages a building * * * by starting a fire, and when (a) another person who is not a participant in the crime is present in such building * * * at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility."

[5] N.Y. PEN. LAW § 150.10 provides: "A person is guilty of arson in the third degree when he intentionally damages a building * * * by starting a fire or causing an explosion."

third degree in the Ulster County Court.  He was found competent to proceed but had two psychiatric examinations on the recommendation of the forensic health team of the Ulster County Jail.  The examining physicians found him to be guarded and mildly depressed, and opined that his crime probably resulted from his mental illness.

As part of his omnibus motions made in November 1998, Makas moved for dismissal of the indictment as unsupported by "legally sufficient evidence" because, he argued, the residential structures, while adjacent, were separate buildings; the fire was initiated in the unoccupied building; and the occupied building was not damaged by the fire. N.Y. CRIM. PROC. LAW § 210.30 (motion to dismiss indictment); § 70.10 (definition of "legally sufficient evidence").  In aid of this motion Makas submitted an affidavit of an architect describing the physical features, including each building's separate foundation and the lack of access to the occupied building from the breezeway, leading to the architect's conclusion that the structures were separate buildings.  The trial court denied the motion finding that whether the "structure was occupied" was a question for the jury.  *People v. Swamp*, 646 N.E.2d 774 (N.Y.1995) (legally sufficient evidence is the equivalent of a *prima facie* case it does not entail proof beyond reasonable doubt).

Thereafter, three days before the case was set for trial, Makas pled guilty to arson in the second degree and was sentenced to an indeterminate prison term of 6 to 12 years.  Makas appealed alleging two grounds: 1) that his counsel had provided ineffective assistance of counsel by failing to pursue a NRRMDD plea and 2) that his plea was involuntary because the plea allocution failed to establish  the elements necessary to establish second-degree arson.  The Appellate Division noted both grounds, emphasized that Makas placed great emphasis on his lack of mental capacity, but concluded that because the plea colloquy established that Makas vigorously contended that the rental units were two separate units and the trial court never made a specific finding that they constituted one unit for purposes of second-degree arson and communicated that finding to Makas concluded the plea was defective.[6/]  In other words, while there is no express reference to an *Alford*-plea in the

---

[6/] Specifically the court faulted the trial court for failing to either obtain an admission from Makas that the two units comprised a single building or to reach a conclusion to that effect as a matter of law.  It is not clear what the court meant by as "a matter of law."  The trial court had earlier found "legally sufficient evidence" to take the case to a jury when it denied the motion to dismiss.  This was found insufficient.  The
(continued...)

appellate decision,[7] New York law recognizes such a plea and the appellate court faulted the trial

---

[6](...continued)
term "building" is defined in the statute for purposes of Arson. N.Y. CRIM. PEN. LAW 150.00. In relevant part it is phrased negatively as "where a building consists of two or more units separately occupied and secured each unit shall not be deemed a separate building." We are not expressly told when two units separately occupied and secured constitute a "building." Consistent with its legislative history the partial definition could be read positively as "where two or more units are structurally connected they constitute a single building even though separately occupied and secured. *See People v. Keech*, 467 N.Y.S.2d 786 (N.Y. Sup. Ct.1983) (discussing the legislative history); *cf. People v. Grassi*, 708 N.E.2d 976 (N.Y.1999) (upholding conviction of Arson in the second degree where the fire was started in an unoccupied night club adjacent to an occupied motel where the two structures were "essentially a single entity" because they shared a common wall). If the trial court viewed the statute in this way then Makas' two rental units could be deemed structurally connected by the enclosed covered breeze-way and the matter could have been resolved as a matter of law. It does not appear that the trial court did view the case in this way. As we have seen the trial court initially saw the issue as one of fact for the jury. Viewed in this way the appellate court, apparently applying *Serrano*, concluded that Makas would have to admit the facts. The only other option would be an *Alford*-plea.

        In later proceedings to consider the proposed NRRMDD plea the trial court did not find that the two rental units constituted a single building as a matter of law. Defense counsel, the prosecutor and the trial judge seemed to conclude that a finding that the evidence contained in the prosecutor's proffer expanded by the statements of defense counsel and admissions by the defendant that the evidence if unimpeached and uncontradicted would permit the jury to find guilt beyond reasonable doubt of all of the elements of Arson in the second degree (and Arson in the third degree) would suffice to permit a person pleading NRRMDD to concede factual guilt. Clearly the factual record was expanded beyond the record at the earlier change of plea hearing. This time Makas did not expressly deny any of the elements of Arson in the second degree. He did admit setting the fires and that the occupied unit suffered smoke damage and that he knew that the second unit was occupied at the time and damage to that unit was a foreseeable consequence of a fire in the other unit. The trial court in accepting the NRRMDD plea found that there was an evidentiary basis for the plea, *i.e.*, that the prosecutor's proffer supplemented by the concessions of Makas and defense counsel provided a prima facie case for each of the charges.

        [7] The term *Alford*-plea refers to *North Carolina v. Alford*, 400 U.S. 25 (1970), in which the Supreme Court held that a person claiming innocence might nevertheless enter a binding guilty plea where he understood what the government had to prove and feared that a jury would find him guilty despite his claim of innocence and that the court would impose a longer sentence on one convicted by a jury than on one who pleads. New York recognizes *Alford* pleas. *See e.g. People v. Alexander*, 769 N.E.2d 802 (N.Y.2002); but the New York courts require that the record clearly establish a strong showing of guilt coupled with clear recognition that the defendant understands what the government would have to prove, *i.e.*, the elements of the crime and recognizes the consequences of his plea. *See People v. Serrano*, 206 N.E.2d 330, 333 (N.Y.1965) (where defendant's plea colloquy presents a version of the facts which is not consistent with the charge to which he is pleading he must be so informed in which case he may still plead guilty perhaps to avoid conviction of a more serious crime if the court takes precautions to assure that the defendant knows what he is doing). When Makas entered his guilty plea to Arson in the second degree he did not expressly admit that the two units were one building or that if they were separate buildings the fire he set in the first unit caused damage in the second occupied unit. *Compare* People v. Keech, 467 N.Y.S.2d 786 (N.Y. Sup.

(continued...)

court for not either obtaining an admission of guilt from Makas that the two buildings were one structure or alternatively an admission that, while Makas continued to contend that he was innocent of second-degree arson, he recognized what the jury would have to find in order to convict him and conceded that a jury could find him guilty of second-degree arson, in which case he might receive a longer sentence and wished to enter the plea to avoid a longer sentence.  *See People v. Makas, supra.*   After remand to the Ulster County Court, Makas obtained new counsel—Dennis B. Schlenker—and the case was scheduled for trial.   A few days before the date set for trial Makas entered a NRRMDD plea to the charges in the indictment under N.Y. CRIM. PROC. LAW § 220.15.[8]

---

[7](...continued)
Ct.1983) (one building necessary) *with People v. Davis*, 392 N.Y.S.2d 195, 197 (N.Y. Sup. Ct.1977) (fire foreseeable consequence of fire set in unoccupied building is damage to adjacent occupied building conviction of Arson in the second degree upheld.).  In contrast, when he entered his NRRMDD plea he no longer claimed to be innocent of Arson in the second degree.  Makas did this he tells us because he then believed that the distinctions between Arson in the second degree and Arson in the third degree would not make any difference.

[8] N.Y. CRIM. PROC. LAW § 220.15 provides:
1. The defendant may, with both the permission of the court and the consent of the people, enter a plea of not responsible by reason of mental disease or defect to the entire indictment. The district attorney must state to the court either orally on the record or in a writing filed with the court that the people consent to the entry of such plea and that the people are satisfied that the affirmative defense of lack of criminal responsibility by reason of mental disease or defect would be proven by the defendant at a trial by a preponderance of the evidence. The district attorney must further state to the court in detail the evidence available to the people with respect to the offense or offenses charged in the indictment, including all psychiatric evidence available or known to the people. If necessary, the court may conduct a hearing before accepting such plea. The district attorney must further state to the court the reasons for recommending such plea. The reasons shall be stated in detail and not in conclusory terms.
2. Counsel for the defendant must state that in his opinion defendant has the capacity to understand the proceedings and to assist in his own defense and that the defendant understands the consequences of a plea of not responsible by reason of mental disease or defect. Counsel for the defendant must further state whether in his opinion defendant has any viable defense to the offense or offenses charged in the indictment other than the affirmative defense of lack of criminal responsibility by reason of mental disease or defect. Counsel for the defendant must further state in detail the psychiatric evidence available to the defendant with respect to such latter affirmative defense.
3. Before accepting a plea of not responsible by reason of mental disease or defect, the court must address the defendant in open court and determine that he understands each of the following:
    (a) The nature of the charge to which the plea is offered, and the consequences of
                                                                        (continued...)

NRRMDD is an affirmative defense that the defendant must prove by a preponderance of the evidence.  N.Y. CRIM. PROC. LAW § 25.00 (defining affirmative defense) and N.Y. CRIM. PROC. LAW § 40.15 (mental disease or defect as affirmative defense).  A NRRMDD plea may only be accepted

---

[8](...continued)
such plea;

(b) That he has the right to plead not guilty or to persist in that plea if it has already been entered;

(c) That he has the right to be tried by a jury, the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself;

(d) That if he pleads not responsible by reason of mental disease or defect there will be no trial with respect to the charges contained in the indictment, so that by offering such plea he waives the right to such trial;

(e) That if he pleads not responsible by reason of mental disease or defect the court will ask him questions about the offense or offenses charged in the indictment and that he will thereby waive his right not to be compelled to incriminate himself; and

(f) That the acceptance of a plea of not responsible by reason of mental disease or defect is the equivalent of a verdict of not responsible by reason of mental disease or defect after trial.

4. The court shall not accept a plea of not responsible by reason of mental disease or defect without first determining that there is a factual basis for such plea. The court must address the defendant personally in open court and determine that the plea is voluntary, knowingly made, and not the result of force, threats, or promises. The court must inquire whether the defendant's willingness to plead results from prior discussions between the district attorney and counsel for the defendant. The court must be satisfied that the defendant understands the proceedings against him, has sufficient capacity to assist in his own defense and understands the consequences of a plea of not responsible by reason of mental disease or defect. The court may make such inquiry as it deems necessary or appropriate for the purpose of making the determinations required by this section.

5. Before accepting a plea of not responsible by reason of mental disease or defect, the court must find and state each of the following on the record in detail and not in conclusory terms:

(a) That it is satisfied that each element of the offense or offenses charged in the indictment would be established beyond a reasonable doubt at a trial;

(b) That the affirmative defense of lack of criminal responsibility by reason of mental disease or defect would be proven by the defendant at a trial by a preponderance of the evidence;

(c) That the defendant has the capacity to understand the proceedings against him and to assist in his own defense;

(d) That such plea by the defendant is knowingly and voluntarily made and that there is a factual basis for the plea;

(e) That the acceptance of such plea is required in the interest of the public in the effective administration of justice.

6. When a plea of not responsible by reason of mental disease or defect is accepted by the court and recorded upon the minutes, the provisions of section 330.20 of this chapter shall govern all subsequent proceedings against the defendant.

with the permission of the court and the consent of the people, *i.e.*, the prosecution.  Before accepting the plea the trial court must address the defendant personally and determine that he is competent and factually guilty of the offenses to which he contemplates pleading NRRMDD.  To this end the prosecutor must set out in detail the evidence that would be presented if the case went to trial.  Once a NRRMDD plea is accepted, the case is governed by N.Y. CRIM. PROC. LAW §330.20 (*see* § 220.15(6)).  N.Y. CRIM. PROC. LAW § 330.20 provides for the temporary detention of the acquittee until an examination may be performed to determine if the acquittee suffered from a dangerous mental disorder, *i.e.*, that he constituted a physical danger to himself or others on account of a mental illness.[9/]  No appeal was taken from the order accepting the plea and ordering Makas temporarily detained.

On April 12, 2001, the Ulster County Court, upon finding Makas suffered from a dangerous mental disorder, as defined in N.Y. CRIM. PROC. LAW. § 330.20,[10/] entered a commitment order remanding Makas to the custody of the New York State Commissioner of Mental Health.[11/]  Makas sought a rehearing and review of the initial commitment order in the Orange County Court, which by order dated March 11, 2002, confirmed the initial commitment order.[12/]  Subsequent retention

---

[9/] N.Y. CRIM. PROC. LAW § 330.20 establishes a three-tier system commonly referred to as tracks. The applicable tracks are premised upon findings that the defendant either: (i) has a dangerous mental disorder [track 1]; or (ii) is mentally ill but has no dangerous mental disorder [track 2]; or (iii) is neither mentally ill nor has a dangerous mental disorder [track 3].  *See People v. Stone*, 536 N.E.2d 1137, 1139 (N.Y.1989).

[10/] That Commitment Order specifically noted that crime charged of which Makas was found not responsible by reason of mental disease or defect was Arson in the Second Degree, N.Y. PEN. LAW § 150.15.

[11/] Patients found to suffer from a dangerous mental disorder are classified as track 1 patients confined in a secure facility operated by the New York Office of Mental Health.  *Matter of Jamie R.*, 844 N.E.2d 285, 287 (N.Y.2006).

[12/] Under New York law Makas had two alternative avenues to challenge the initial commitment order and any subsequent retention or recommitment orders.  He could, as he did, demand a rehearing and review held before a different judge or jury within 30 days of the entry of the order, N.Y. CRIM. PROC. LAW § 330.20[16], or he could seek leave to appeal the order to an intermediate appellate court, N.Y. CRIM. PROC. LAW § 330.20(21).  There are fundamental differences between the two alternatives. The rehearing and review proceeding is a *de novo* review of the earlier record as well as any new evidence presented concerning the acquittee's mental status at the time of the rehearing and review to determine if the conditions of supervision originally imposed are appropriate at that time.  An appeal on the other hand reviews the lower court's determination based upon the record at the time of the initial proceeding.  While the terms of
(continued...)

orders issued in the Orange County Court on November 14, 2001,[13/] and February 18, 2004, found Makas to be still suffering from a dangerous mental disorder and continued his retention in a secure psychiatric facility. Makas appealed the orders dated November 14, 2001, and March 11, 2002, and the Appellate Division affirmed the orders. *Matter of Timothy M*., 763 N.Y.S.2d 320 (N.Y. App. Div.2003).[14/]   Makas did not seek leave to appeal to the New York Court of Appeals.

On or prior to August 23, 2001,[15/] Makas, appearing *pro se*, filed a motion to vacate the judgment under N.Y. CRIM. PROC. LAW § 440.10 contending:[16/] (1) he was denied effective assistance of counsel in that his attorney did not tell him in advance which counts of the indictment he would be pleading to and told him that there was no difference between a plea to Arson in the Second Degree and Arson in the Third Degree; (2) his plea was not knowing and voluntary; and (3) the

---

[12/](...continued)
confinement and release may be challenged in both the rehearing and review proceeding and on appeal, the original track status may be challenged only at a commitment, recommitment or retention hearing and then under the appeal process. *See Matter of Norman D.*, 818 N.E. 2d 642, 645–46 (N.Y.2004). Likewise, the secure versus non-secure placement question is not reviewible in the rehearing and review proceeding, even if the patient is found to no longer to suffer from a dangerous mental disorder. *Matter of Jamie R.*, 844 N.E.2d at 293–94. Thus, by choosing the rehearing and review procedure following the initial commitment order Makas forfeited his right under New York law to challenge his track classification and commitment to a secure facility instead of a non-secure facility. It should be noted that a person who is initially committed is entitled to a retention hearing in six months and, if retained, periodic retention hearings thereafter. If the person is transferred to a non-secure facility or released subject to conditions the state may at a later time seek recommitment by showing a present dangerous mental disorder or the need for custodial treatment. After each commitment, recommitment or retention hearing the defendant has the same choice: appeal an adverse commitment or retention decision, at which time track status may be litigated, or seek a rehearing and review which only considers whether the defendant is currently mentally ill and in need of custodial treatment.

[13/] Because the initial commitment order was limited by statute to six months, N.Y. CRIM. PROC. LAW § 330.20(1)(f), the first retention hearing was held before the time the Orange County Court concluded the rehearing and review process.

[14/] Makas, represented by counsel in that appeal, did not raise any ineffective assistance of counsel argument. Makas argued that: (1) The Supreme Court erred in finding that he had a dangerous mental disorder; and (2) the November 14, 2001 order must be reversed because the proceeding was brought pursuant to the Criminal Procedure Law instead of the Mental Hygiene Law.

[15/] Makas' moving papers are undated. The records of the Ulster County Court show that the motion was filed on August 23, 2001.

[16/] Makas explicitly noted that he did not challenge any findings as to his mental illness. He likewise does not challenge the mental illness findings in his petition to this Court.

People improperly withheld exculpatory material.[17]  The Ulster County Court denied the motion, the Appellate Division denied leave to appeal on December 31, 2001, and the New York Court of Appeals dismissed his application for leave to appeal the Appellate Division's denial on March 5, 2002. *People v. Makas*, 769 N.E.2d 363 (N.Y.2002).[18]

The state court records filed with this Court show that on July 18, 2002, Makas filed a petition for a writ of habeas corpus in the Orange County Supreme Court.  In that petition, Makas raised five issues: (1) Ineffective assistance of counsel (entering an insanity plea versus fighting to reduce the charge from second-degree arson to third-degree arson); (2) The facts did not support a charge of second-degree arson; (3) The indictment was impermissibly broadened at the plea hearing;  (4) A *Brady*-type violation; and (5) The indictment was invalid due to factual misrepresentations made to the grand jury.  Although in his petition Makas alleges that his petition was denied April 3, 2002, in his response Respondent affirmatively alleges that the records of the Orange County Court do not show that the court ever ruled on that petition.  In any event, neither party has furnished this Court with a copy of any decision or order of the Orange County Court disposing of that petition.  Thus, for the purpose of ruling on the petition before this Court, it will assume that the habeas corpus petition is still pending.

Respondent concedes Makas timely filed his petition herein in the Southern District of New York, which petition was transferred to this Court on June 26, 2002.  This Court initially dismissed his petition finding that Makas failed to demonstrate exhaustion of state remedies.  On appeal the Court of Appeals remanded the case to:

_____

[17] On this point, entitled "Judgment Procured Under Duress" it is unclear whether he is making a true *Brady* violation claim or an ineffective assistance of counsel claim because trial counsel did not followup on the discovery request, or both.  In any event, Makas did not identify in the motion what exculpatory materials the prosecution had or what they might have established.

[18] The Court notes that in December 2002 Makas also brought a malpractice/breach of contract action against Schlenker, in which he argued that Schlenker had violated his civil rights by providing ineffective assistance of counsel in connection with his NRRMDD plea.  The complaint was dismissed for failure to show a colorable claim for malpractice or breach of contract.  The court concluded that any challenge to the plea was foreclosed by the rejection of Makas' N.Y. CRIM. PROC. LAW § 440.10 petition.  Dismissal was affirmed on appeal. *Makas v. Schlenker*, 793 N.Y.S.2d 604 (N.Y. App. Div.), *appeal dismissed*, 837 N.E.2d 757 (N.Y.2005) (Table).

1) require the state to respond to Appellant's 28 U.S.C. § 2254 petition and address whether the Appellant exhausted his state appellate remedies; 2) if the district court determines that appellant failed to exhaust, consider whether the exhaustion requirement should be excused; and 3) determine whether the appointment of counsel, or a guardian ad litem, would be appropriate. 28 U.S.C. § 2254(b)(l)(B)(ii); see also Fed. R. Civ. P. 17(c).

## II.  INITIAL ISSUES ON REMAND

A.  **Appointment of Counsel/Guardian Ad Litem**.

The Court of Appeals mandate directed this Court to determine if appointment of counsel or a guardian *ad litem* would be appropriate.  Appointment of a guardian *ad litem*, while within the broad discretion of this Court under FED. R. CIV. P. 17(c), is not undertaken lightly. *Cf. Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 651-52 (2d Cir.1999) (discussing the procedural safeguards necessary before appointing a guardian ad litem because of the stigma attached to a finding of incompetency and the impact of such a finding on the interest of the litigant in maintaining control over the litigation).  Neither Makas nor the Respondent question Makas' competency.  Review of the record in this case indicates that the only point at which the competency of Makas was at issue preceded entry of his initial guilty plea after which he was found competent to proceed in the criminal proceedings.[19]  A review of the plea colloquy shows that Makas fully understood the nature of the proceedings, responded appropriately to questions from the court, did not exhibit confusion or uncertainty, and consulted with counsel.  The subsequent hearings in the New York state courts addressed whether Makas posed a danger to himself or others because of his mental illness and do not appear to bring into question legal competency. *See Matter of Timothy M., supra*.  The record appears to establish that Makas responds well to medication.  Makas has not been adjudicated incompetent by any court nor has there been presented to this Court any other evidence of incompetence, *e.g.*, a diagnosis by a mental health professional that Makas is being treated for a mental illness that would render him legally incompetent. *See Ferrelli v. River Manor Health Care Center*, 323 F.23d 196, 201–202 (2d Cir.2003); *Bowen v. Rubin*, 213 F.Supp.2d 220 (E.D.N.Y.2001).  It is his current competence that governs in determining whether to appoint a guardian *ad litem* or counsel.  Makas was found to be competent in the prior state court proceedings and there is no basis

---

[19] *People v. Makas*, 709 N.Y.S.2d at 652.

for a contrary finding in these proceedings; consequently, the Court finds Makas to be currently competent.

The Second Circuit has not established standards guiding the appointment of a guardian *ad litem* under Rule 17(c). In the absence of contrary controlling law, this Court adopts the position of the Eastern District in *Bowen*, 213 F.Supp.2d at 223, that competency is determined by reference to the law of New York. Under New York law a guardian is appointed for "an adult incapable of adequately prosecuting or defending his rights." N.Y. CIV. PRAC. LAW & RULES § 1201. Appointment of "a guardian *ad litem* is justified when, based on a preponderance of the evidence, the court concludes that a party's condition impedes [Makas'] ability to protect [his] rights...." *New York Life Ins. Co. v. V.K.,* 711 N.Y.S.2d 90, 96 (N.Y. Civ. Ct.1999). Because no detailed definition of incapacity is set forth in N.Y. CIV. PRAC. LAW & RULES § 1201, it has been held that it is appropriate to utilize the definition of incapacity in the criminal rules. *See Matter of Vance A.*, 432 N.Y.S.2d 137, 146 (N.Y. Fam. Ct.1980). Under N.Y. CRIM. PROC. LAW § 730.10 a defendant in a criminal case is incapacitated from standing trial if he "lacks capacity to understand the proceedings against him or to assist in his own defense." This is also the federal standard. *Godinez v. Moran,* 509 U.S. 389 (1993) (standard for competency to plead guilty or waive civil rights is the same as the test for competency to stand trial ). There is no evidence before this Court that indicates Makas does not understand the nature of the proceedings or is unable to assist in the prosecution of his case. Simply stated, there is no basis in the record to question Makas' legal competency or, more importantly to this issue, to question his ability to manage his own case.

At Docket No. 36, in response to the remand from the Second Circuit, Makas requested appointment of counsel. At Docket No. 67 this Court denied that request.[20] A district court may not usually change its prior decisions absent an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.2003). Inasmuch as there has been no change in circumstances in the interim, the Court has

---

[20] That ruling having determined the issue is the law of the case. *Quern v. Jordan*, 440 U.S. 332, 347, n. 18 (1979).

MEMORANDUM DECISION
*Makas v. Bennett*, No. 9:02-cv-00836-JKS                    11

no reason to revisit that order.  Moreover,  even if the Court were to revisit its prior order it would not change the result.

No court has determined that Makas is indigent.  He was represented by retained counsel prior to his guilty plea.  On remand he hired Mr. Schlenker to represent him.  Finally, he has been represented by retained counsel during his periodic retention hearings.  Makas has not retained new counsel.

Assuming without deciding that Makas is currently indigent,[21/] the court could appoint counsel in an appropriate case.   In determining whether to appoint counsel under Rule 17(c), in *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d. Cir.1998) the Second Circuit appears to have approved the test utilized under the *in forma pauperis* statute, 28 U.S.C. § 1915, stating:

> [I]n determining whether to appoint counsel for an indigent litigant, a district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

As discussed further below, Makas in this case does not meet the threshold requirement that his position seems likely to be of substance.  Moreover, even assuming his claims met the threshold requirement, the other factors militate against appointment of counsel.  Makas is a mature individual in his mid-forties with a college degree; the crucial facts have been identified; there is no conflicting evidence; and the lack of any testimonial evidence eliminates any need for cross-examination.  The absence of disputed issues of material fact have led the Court, in the exercise of its discretion, to conclude that no evidentiary hearing need be held.  *Schriro v. Landrigan*, 550 U.S.___, 127 S.Ct. 1933, 1940–41 (2007); *Chang v. United States*, 250 F.3d 79, 85 (2d Cir.2001); *see United States v. Gonzales*, 970 F.2d 1095,1101 (2d Cir.1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution).

---

[21/] The Court notes that at Docket No. 60 Makas filed a Request to Proceed *in Forma Pauperis*, which has not yet been ruled on.  Given the analysis that follows, the Court finds it unnecessary to rule on that request.

While the legal issues presented are somewhat complex, the papers filed by Makas in this Court show that he fully understands the nature of the proceedings and, although the Court does not agree with his legal analysis, he nonetheless exhibits an understanding of the issues and the law involved at least equal to that of most *pro se* prisoners and better than many.  No special reason exists to appoint counsel.  It should be noted that New York law provides detailed standards governing the acceptance of NRRMDD pleas to assure that the plea is voluntary. N.Y. CRIM. PROC. LAW § 220.15. The extensive plea hearing held in this case, which was fully transcribed, provides a basis for determining whether there was substantial compliance with the statute.  Both the Second Circuit Court of Appeals and the New York Court of Appeals have provided detailed guidance regarding the consequences of a NRRRMDD plea.

Based on the record before it, this court can not say representation by an attorney or the appointment of a guardian *ad litem* is necessary to protect Makas' rights.  The Court therefore in the exercise of its discretion declines to appoint either counsel or a guardian *ad litem*.

B.  **Exhaustion**.

In order to exhaust his state remedies Makas must have presented each of his federal claims identified as such to a New York court of first instance and then appealed any adverse decision to the extent of any appeals as a matter of right and then sought discretionary appeals to New York's highest court.  The Court has identified Makas' claims as involving two related issues: 1) did he enter a voluntary NRRMDD plea; and 2) was his plea the result of ineffective assistance of counsel because it was based upon misinformation.  In so doing the Court reviewed the record with care and interpreted each of Makas' assertions liberally stating his case as forcefully as the facts and the law suggest.  *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003).[22]  Specifically, Makas argues that his attorney did not sufficiently and accurately explain to him the consequences of a NRRMDD plea as it would affect his future confinement so that he could intelligently compare possible outcomes if he was convicted by a jury of the crimes charged in the indictment as opposed to entering a NRRMDD plea.  In evaluating this claim it is important to recognize what Makas is not contending. He concedes his mental illness which is a severe psychosis (paranoid schizophrenia).  He also

---

[22] Makas makes other claims as well, each of which will be examined to determine whether it has been preserved and exhausted or waived.

concedes (or, at least, has never contested) that at roughly the same time he intentionally set three fires, one was to a rental unit which he owns but, while rented, was unoccupied at the time he set the fire.  Makas denies that he set fire to an adjacent unit which he also owned, which he knew was occupied by his sleeping tenants; but he does not contest the fact that the two units were adjacent and only 14½ feet apart, the apparent width of the breezeway, that the second occupied unit was joined to the first unit by an enclosed covered breezeway, and that smoke from the fire at the first unit penetrated and damaged the second unit forcing its inhabitants to evacuate in the early morning hours.  Makas has always denied that he intended to set fire to an occupied building and as we shall see has vigorously litigated the question whether the two adjacent rental units which he owned constituted a single building.  He has not, however, denied that he knows that he was charged with Arson in the Second Degree and that he knew the elements of that offense.  He really cannot deny this knowledge since the elements of Arson in the Second Degree involving the same two rental units formed part of the basis of his appeal from his earlier plea of guilty to Arson in the Second Degree. This is important because before a New York trial judge may accept a NRRMDD plea N.Y. CRIM. PROC. LAW § 220.15 requires the judge to address the defendant personally and determine whether there is an evidentiary basis for the plea.

Since a NRRRMDD plea admits factual guilt, in entering such a plea a defendant consents to a finding that he or she could be found guilty beyond a reasonable doubt of each of the crimes charged in the indictment.  The trial court must, therefore, consider the prosecutor's proffer, the statements of defense counsel and the defendant's admissions and either make a finding that the defendant concedes those facts or independently determine that those facts, if unimpeached and uncontradicted, would permit a jury acting reasonably to find guilt beyond reasonable doubt.  As we saw in discussing the reversal of Makas' conviction of second-degree arson, New York Courts allow an *Alford*-plea and this Court assumes that New York law would allow a competent defendant proposing a NRRMDD plea to concede a factual basis for such a plea despite a claim of factual innocence.  The New York Court of Appeals affirmed an *Alford*-plea in *Alexander* despite evidence that the defendant, while competent, had a history of mental illness.  It appears that the Appellate Divisions's real concern when it reversed Makas' conviction of second-degree arson was the fear that a defendant may plead guilty on the mistaken assumption that he is guilty because he doesn't know

what the government would have to prove beyond a reasonable doubt in order to convict him.  *See Henderson v. Morgan*, 426 U.S. 637 (1976) (stressing importance that mentally retarded defendant understand the charge and its elements).  To avoid this result the defendant must demonstrate that he knows what the government must prove and either concedes factual guilt or acknowledges that a jury could find guilt beyond reasonable doubt on the government's proffer and the defendant's concessions, and the defendant indicates his desire to go forward with the plea despite his claim of innocence.  In this case it is clear that Makas knew what the prosecution would have to prove in order to convict him of second-degree arson.  Makas' claim is that he entered what was in effect an *Alford*-plea on the mistaken assumption that admitting to factual guilt of second-degree arson would have no impact upon future commitment hearings beyond admitting to the facts of third-degree arson.[23]  This contention will be addressed hereafter.

### III.  MAKAS' MISCONCEPTIONS REGARDING THE LAW

In presenting his claims Makas seems to be laboring under a number of misconceptions regarding the law, which explains to a certain extent the nature of his claims.  In order to decide the exhaustion issue these misconceptions will be addressed in order.

First, Makas seems to believe that if his defense had been more vigorous the charge of second-degree arson could have been dismissed pre-trial.  In fact, the first attorney employed by Makas challenged the charge of second-degree arson pretrial and introduced evidence regarding the relationship between unit 1 and unit 2.  He offered the testimony of an architect describing the units their separate foundations the way the breezeway was constructed and based upon this evidence sought dismissal of the second-degree arson charge.  The trial court denied this motion concluding that whether the units constituted two buildings or only one was a fact question for the jury, *i.e.*, that the prosecution had made a *prima facie* case.  At this point Makas on the advice of his first attorney entered a plea of guilty to second-degree arson.  He later appealed the resulting conviction arguing 1) that his counsel was ineffective for not pursuing a NRRMDD plea and 2) the plea colloquy did not establish a voluntary plea to second-degree arson.  The appellate court noted the first claim but

---

[23] Thus, Makas is not arguing, as he did when he appealed from his earlier conviction, that the plea colloquy did not establish his knowledge of the elements of the offense.  It is not clear to what extent challenges to the plea colloquy under N.Y. CRIM. PROC. LAW § 220.15 are cognizable in federal court reviewing a § 2254 petition.

resolved the case on the second claim.  On remand Makas obtained new counsel and eventually entered the NRRMDD plea at issue here.

Second, Makas seems to believe that had he gone to trial he would have necessarily obtained either an order of dismissal, *see* N.Y. CRIM. PROC. LAW § 290.10, regarding second-degree-arson or a favorable jury verdict of acquittal and that he would be able to prove an affirmative defense to Arson in the third degree.[24/]  Of course, as Schlenker conceded during the NRRMDD plea hearing, no one knows for sure what a jury would have decided.  It is clear, however, that a jury acting reasonably could have convicted Makas of second-degree arson on one of two theories, both of which are recognized in *People v. Makas, supra*.  The first is that the two rental units constituted a single building.  It is undisputed that both units were owned by Makas and were side by side joined by a covered breezeway.  The prosecutor argued that both units were carried on the county tax records as a single building.  For purposes of Arson "building" is defined as follows (N.Y. PENAL LAW § 150.00 (Arson definitions)):

> As used in this article. 1. "Building", in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein.  Where a building consists of two or more units separately secured or occupied, each unit shall not be deemed a separate building.

The language that a building consisting of two or more units shall not constitute separate buildings was added to change prior New York law, which did treat two apartments in the same apartment house as separate buildings.  *See* discussion in *People v. Keech,* 467 N.Y.S.2d 786 (N.Y.

---

[24/] N.Y. PEN. LAW § 150. 2 provides in relevant part: "In any prosecution under this section [Arson in the third degree] it is an affirmative defense that (a) no person other than the defendant had a possessory or proprietary interest in the building · · · or if other persons had such interests, all of them consented to the defendant's conduct, and (b) the defendant's sole intent was to destroy or damage the building · · · for a lawful and proper purpose, and (c) the defendant had no reasonable ground to believe that his conduct might endanger the life or safety of another person or damage another building · · ·." The undisputed facts preclude operation of this defense.  While Furman had not moved in she had rented the premises and moved some of her property into her unit.  There is no evidence she consented to the fire.  In any event, Makas had reasonable grounds to believe that firefighters would respond and the risk to them is sufficient to defeat the affirmative defense. *See, e.g., People v. Gigliuto*, 803 N.Y.S.2d 216 (N.Y. App. Div. 2005) ( Month to month tenant is "other person" who must consent to fire and risk to fire personnel defeats defense).  There is thus no possibility that this affirmative defense would have been successful at trial. *See Pannucio v. Kelly*, 927 F.2d 106, 109 (2d Cir.1991).

MEMORANDUM DECISION
*Makas v. Bennett*, No. 9:02-cv-00836-JKS                16

Sup. Ct. 1983).  Given the facts that are undisputed, interpreted in light of the definition in § 150.00, a jury could reasonably have found beyond reasonable doubt that the two units joined by an enclosed and covered breezeway constituted a single building, *i.e.*, were structurally connected.  *Cf. People v. Grassi,* 708 N.E.2d 976 (N.Y.1999) (upholding Arson in the second degree conviction when fire was set in an unoccupied night club adjacent to an occupied motel where the two structures were "essentially a single entity" because they shared a common wall).  Since it is undisputed that Makas started a fire in unit 1 and knew that the adjacent unit was occupied, and that unit suffered smoke damage as a direct result of the fire, such a jury finding would pass constitutional muster.  Slight damage is sufficient to satisfy the "damage" to a building prong of the various arson statutes.  *See People v. McDonald,* 496 N.E.2d 844 ( N.Y. 1986); *People v. Calderon,* 682 N.Y.S.2d 38 ( N.Y. App. Div.1998) (blistering and smoke damage); *People v. Fleming*, 560 N.Y.S.2d 50 (N.Y. App. Div.1990) (smoke damage and heat damage to light fixtures).

Alternatively, a jury could have found that Makas started a fire in unit 1, which he knew would endanger unit 2 and in fact did damage unit 2 at least to the extent of causing smoke damage, which forced the evacuation of the unit by its occupants.  *People v. Davis*, 392 N.Y.S.2d 195, 197 (N.Y. Sup. Ct.1977).  It is instructive that Makas told the police that he wished to commit suicide and started fires at his various properties to destroy them so that his family would not have to dispose of his property.  Clearly unit 2 was part of his property from which a jury could infer that he intended to destroy that as well but reconsidered when he thought about the occupants of unit 2 whom he knew to be sleeping there leading him to call the police.

Third, Makas seems to think he could gain the benefit of plea negotiations by pleading not guilty to second-degree arson and NRRMDD to third-degree arson.  But the statute makes it clear that a plea of NRRMDD must be made to the entire indictment if it is to resolve the case.  While Makas could have persisted in his plea of not guilty to second-degree arson he would have had to go to trial and risk conviction.  There is nothing in the record to suggest that the prosecution  would have been willing to dismiss the second-degree arson charge in return for a plea to third-degree arson.

Fourth, Makas seems to believe that if he had gone to trial and been acquitted of second-degree arson and found NRRMDD as to third-degree arson he could not have been placed in track 1 in a subsequent commitment hearing.  Makas is incorrect.  At the commitment hearing three issues

were in question.  First, was he mentally ill?  Makas is indisputably suffering from a serious mental illness: psychosis (paranoid schizophrenia).  Second, was his mental illness related to his crime?  This would be established by the jury (or court) finding him NRRMDD as to third-degree arson.  Third, was he suffering from a "dangerous mental disorder" defined as someone with a mental illness who because of that condition currently constitutes a physical danger to himself or others?  It is undisputed that Makas threatened suicide and thus was a danger to himself.  It is also undisputed that Makas started fires under circumstances that endangered others.  While second-degree arson clearly involves physical danger to others, the facts of this case, even without a second-degree arson finding, would support a finding of dangerous mental disorder.  Thus, it seems that, given the facts of this case, a sustained plea of NRRMDD as to arson in either the second-degree or third-degree would have resulted in track 1 placement.

Fifth, Makas seems to think that the sentence he received for second-degree arson when he pled guilty to that charge—6 to 12 years indeterminate—would somehow limit the period he could be confined as a NRRMDD acquittee.  First, that sentence would not limit the sentence to which he could have been sentenced if he went to trial and was convicted of second-degree arson. His exposure was 47 years not 6 to 12 years.  But in determining whether to retain a NRRMDD acquittee the court is not concerned with the maximum sentence he could have received if he had been convicted of the underlying charges.  In making this determination, the court is only concerned with whether he remains mentally ill and, as a result, is a danger to himself or others.  Thus, the maximum sentence for second-degree arson and for that matter the maximum sentence available for third-degree arson does not determine the maximum period of confinement to which a NRRMDD acquittee is vulnerable.

Having thoroughly reviewed the record it appears that Makas' case is controlled by *Hill v. Lockhart*, 474 U.S. 52 (1985).  Hill also brought two claims.  First he contended that his plea was involuntary because his counsel had failed to inform him that as a second offender he would have to serve one half of his sentence before becoming eligible for parole and second that his counsel's failure to advise him constituted ineffective assistance of counsel.  The court held that parole eligibility is a collateral consequence of a plea.  Thus, the court concluded that Hill's claim that his plea was involuntary collapsed into his claim that he received ineffective assistance of counsel.

Beyond *Hill* the Supreme Court has not definitively distinguished between direct and collateral consequences of a plea. *See Wilson v. McGinnis*, 413 F.3d 196 (2d Cir.2005). In the Second Circuit direct consequences are those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment," all other consequences are deemed collateral. *Id.* at 199. It appears that New York law applies the same test. *See People v. Catu*, 825 N.E.2d 1081 (N.Y.2005) (collateral consequences are peculiar to the individual and generally result from the actions taken by agencies the court does not control); *People v. Ford*, 657 N.E.2d 265 (N.Y.1995). Makas was informed of the direct consequences of his plea that he would be examined by a psychiatrist and subject to a commitment hearing. He was further informed that if he was found to be mentally ill and dangerous to himself or others he would be committed to a mental health facility subject to a further hearing in six months. As we have seen, assuming that counsel told Makas that pleading NRRMDD to second-degree arson would not be any worse than pleading NRRMDD to third-degree arson, that is factually correct. It is the facts of his conduct interpreted in light of his mental illness that is determinative of whether he has a dangerous mental disorder, not the precise crime to which he pled, that control. In sum, all of the factors that might result in a longer or shorter commitment time beyond the initial commitment hearing are collateral, not direct, results of a NRRMDD plea.

During the plea hearing defense counsel informed the court that he had explained the elements of Arson in the second degree to Makas. Makas requested and was allowed a recess to speak further with counsel. Counsel indicated after court resumed that he had a further discussion with Makas regarding Arson in the second degree and Makas indicated that he was satisfied and wished to go forward with the plea. *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976) (importance of a representation by counsel that he had discussed the elements of the charge with the defendant). Thus, Makas' only significant federal claim is ineffective assistance of counsel and it is this claim that must be exhausted.

Upon remand this Court ordered Respondent to address whether Makas exhausted his state appellate remedies. Respondent did respond and Makas filed his traverse. In his response Respondent essentially conceded that Makas had exhausted his overarching ineffective counsel claim and had fairly presented the first two grounds (failure to obtain discovery material and misinforming

about consequences of pleading to second-degree versus third-degree arson). The Court agrees that the first and second grounds are exhausted.

As to the third ground the situation is somewhat different. It is possible that it is not a stand alone claim but simply an elaboration of Makas' second claim. Respondent does not address whether the issue of the facts not fitting the crime of second-degree arson has been exhausted. However, it appears that Makas, at least inferentially, raised the third ground in his N.Y. Crim. Proc. Law § 440.10 petition. In denying his petition, the Ulster County Court held (footnote added): "To the extent that defendant's motion challenges the factual predicate for the Arson in the Second Degree charge, the same is not reviewable on this motion pursuant to CPL §440.10(2)(C),[25/] and in any event, there was no conviction of the charge." Thus, the Ulster County Court did address the issue of the sufficiency of the factual predicate for conviction of the crime of second-degree arson. The third ground is also exhausted. *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir.2006). Further it appears that Makas failure to timely appeal the judgment finding him NRRMDD to second-degree arson would render any further recourse to the New York courts futile since the evidentiary basis for a judgment appears to be an appealable issue, as Makas was informed when he appealed his second-degree arson conviction, *see People v. Makas, supra*, and Makas did not appeal. In any event, Respondent is correct that, even if this claim has not been exhausted, this Court could nonetheless deny the claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Greiner v. Wells*, 417 F.3d 305, 317 n. 14 (2d Cir.2005) (holding that because it reached the ineffective claim on the merits, it need not reach the

---

[25/] N.Y. Crim. Proc. Law § 440.10 provides:
Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

\* \* \* \*

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him;

\* \* \* \*

exhaustion issue); *Willbright v. Smith*, 745 F.2d 779, 780-81 (2d Cir.1984) (due process does not require state court to inquire regarding an evidentiary basis for a plea).

## IV.  DISCUSSION ON THE MERITS

Because Makas filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).   As we have seen, those standards govern challenges by NRRMDD acquittees to their continued confinement.  Consequently, this Court cannot grant relief unless the decisions of the state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).   In applying this standard, this Court reviews the last reasoned decision by the state court addressing the issue or issues raised in the petition before this Court.   *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000).   In making this determination, it is irrelevant whether the state court cites the Supreme Court precedents, or is even aware of them; the standard is met "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  In this case the last reasoned decision in this case was the decision of the Ulster County Court on his N.Y. CRIM. PROC. LAW § 440.10 motion.  In addition, state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003).  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*. *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir.2005).  Where there is no reasoned decision of the state court addressing the ground or grounds raised by the petitioner on the merits and no independent state grounds existing for not addressing those grounds, this court must decide the issues *de novo* on the record before it.  *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir.2006) (applying the *Strickland* standards).

To the extent that Makas alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

To demonstrate ineffective assistance of counsel, Makas must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* In applying this test, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id,* at 689. Makas must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). "The level of prejudice [Makas] need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 693).

The Court starts with the proposition that it is well settled that a defendant's Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir.2005). The Court discerns no principled reason not to apply this rule to situations, such as that at bar, involving a NRRMDD plea. The right to effective counsel extends to "all critical stages in the proceedings," *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir. 1998) (per curiam), and "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case," *Boria v. Keane*, 99 F.3d 492, 496–97 (2d Cir.1996).

As the U.S. Supreme Court noted more than 35 years ago in *McMann v. Richardson*, 397 U.S. 759, 769–70 (1970):

[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless

witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

Consequently, while *Strickland* governs claims of ineffective assistance of counsel based upon advice during plea negotiations which result in a plea the prejudice prong is worded differently. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ( ". . . . In order to satisfy the prejudice requirement the defendant must show that there is a reasonable probability that, but for Counsel's errors, he would have not pleaded [NRRMDD] and would have insisted on going to trial.")

A. **Ineffective Assistance of Counsel for Failure to Obtain Discovery Material (First Ground)**.

The Ulster County Court did not address at all Makas' claim concerning the *Brady*-type violation or the failure of defense counsel to follow-up on the claim.  *See Brady v. Maryland*, 373 U.S. 83 (1963) (Suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to guilt or punishment irrespective of the prosecutions good or bad faith.).  Consequently, this Court must review the record *de novo* to determine whether Makas is entitled to relief.

The U.S. Supreme Court has identified what it calls "the three components of a true *Brady* violation": "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Prejudice turns on the materiality of the evidence.  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. *Id*. at 280-81.  Of critical import in the case at bar is that there is absolutely nothing in the record that even remotely suggests the prosecution suppressed any evidence.  The case did not go to trial.  In neither the petition before the Ulster County Court nor before this Court does Makas point to

anything in the record that even tangentially supports his supposition that the prosecution suppressed any evidence that was exculpatory.  In the absence of a trial, in order to prevail Makas would have to show that exculpatory evidence existed, that he and his counsel were not aware of the evidence, and that the prosecutor was aware of it but failed to disclose it to Makas and his counsel in a timely manner.  Makas' factual allegation in his petition is simply (original printed in all uppercase letters):[26]

> E) Brady materials would have supported the affirmative defenses per count 2 and 3 that they are not 'crimes' even if the prosecution could prove petitioner did them, as per count 1: it would have supplemented the leases to show petitioner didn't do the 'crime' of arson 2d.

> Second-degree arson is defined under New York Law as (N.Y. PEN. LAW § 150.15):

> A person is guilty of arson in the second degree when he intentionally damages a building or motor vehicle by starting a fire, and when (a) another person who is not a participant in the crime is present in such building or motor vehicle at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility.

As discussed further below with respect to his third ground for relief, how, in light of his admissions at the plea allocution, the impact of any material the prosecution might have had that would have been exculpatory is unexplained and inexplicable.  Construing the record most favorably to Makas, he seems to be arguing that a more thorough development of the facts would somehow have eliminated second-degree arson from the case or strengthened the factual defense to second- and third-degree arson had the case gone to trial.[27]  Makas' current belief is that at most he could have

---

[26] In his traverse Makas identifies the "leases" and an Arson Task Force Report that shows no insurance and no mortgage.  The lack of insurance and a mortgage on the property are facts presumptively within the knowledge of Makas and the leases were also presumptively not only within Makas' knowledge but his possession as well.  The court does, however, recognize that Makas claims that the police seized the leases and other documentary evidence regarding his ownership of the rental units and refused to return them to him prior to the entry of his NRRMDD plea.  In any event it is not clear what impact this evidence would have on guilt or innocence.  If Makas is arguing that this evidence would show that he lacked an economic motive to commit arson, motive is not an element of the crime of second-degree arson.  Makas told the police that he had a non-economic  motive to burn the property.  He intended to commit suicide and didn't wish to leave his family with the burden of disposing of his property.  No one has ever contended that Makas' motive was economic.

[27] Makas also believes that this evidence would help to support the affirmative defense to Arson in the third degree that everyone having a possessory or proprietary interest in the property consented to the fire
(continued...)

been convicted of Arson in the fourth degree.[28/]  *Hill* teaches that such a claim raises two issues: (1) would a more complete factual record have led trial counsel to advise differently regarding a NRRMDD plea or 2) regardless of legal advice would Makas have refused the NRRMDD plea and proceeded to trial.  *Hill*, 477 U.S. at 59.  It appears that both Makas and trial counsel were aware of evidence that would support a defense to second-degree arson.  Trial counsel conceded that a jury could go either way and the factual disputes would permit an appellate issue.  He nevertheless advised Makas to plead NRRMDD to second-degree arson.  There is nothing in the record that would permit an inference that trial counsel would have given different advice if he had the evidence Makas claims was suppressed.  In any event, Makas' admissions in the plea colloquy cured any error going to guilt or innocence by convincing the trial court that there was a *prima facie* case for each of the three counts in the indictment.  Evidence to negate a motive that the prosecution did not seek to prove hardly constitutes a *Brady* violation.  Not only does Makas fail to establish a *Brady*-type violation, he fails to establish that counsel's representation was deficient even if counsel did not pursue the discovery claim, thus failing the first prong of the *Strickland-Hill* test.  Makas is not entitled to relief on his first ground.

B.  **Ineffective Assistance of Counsel by Misrepresenting That Entry of a Plea to the Second-degree Arson Charge as Opposed to the Third-degree Arson Charge Would Not Matter Once Makas Was Committed (Second Ground)**.

Respondent argues that because Makas was found not criminally liable, the outcome was more favorable than if he had been convicted at trial—thus, he suffered no prejudice from pleading NRRMDD to second-degree arson even if he had a factual defense.  Respondent misses the point of Makas' argument.  The gist of his argument is that if he had received accurate advice from counsel

---

[27/](...continued)

and no one was put at risk by the fire.  The undisputed facts preclude this defense with or without the evidence to which Makas refers.  *See* note 24, *infra*.

[28/] N.Y. Pen. Law § 150.05, which provides in relevant part: "1. A person is guilty of Arson in the Fourth degree when he recklessly damages a building ⋯ by intentionally starting a fire ⋯ .  2.  In any prosecution under this section, it is an affirmative defense that no person other than the defendant had a possessory or proprietary interest in the building ⋯. Arson in the fourth degree is a class E felony.  The fact which distinguishes Arson in the second and third degree from Arson in the fourth degree is intent to do damage to a building.  *Doolen v. Darrigrand*, 397 N.Y.S. 2d 283 (N.Y. App. Div.1977)  It is undisputed that Makas intended to do damage to three buildings, his residence, a detached garage and the Furman unit.

he would not have pled NRRMDD to second-degree arson, he would have gone to trial on second-degree arson, interposed an affirmative defense to the third-degree arson and, at most, been found NRRMDD of fourth-degree arson attempted arson.[29]   The argument continues that if he had known that the duration of his commitment would be affected by the difference between admitting factual guilt to second-degree arson as opposed to admitting factual guilt to third-degree arson, Makas would not have entered the NRRMDD plea but have gone to trial and taken his chances.  Respondent also overlooks the fact that the People essentially conceded the defense of not responsible by reason of a mental disease or defect, *i.e.*, that all the evidence supported that finding.  Consequently, assuming Makas is correct, a jury could have found him not guilty of second-degree arson and of not responsible by reason of a mental disease or defect as to fourth-degree arson or, more realistically, third-degree arson.

Makas' argument is essentially that he is being detained for longer time because he pled to committing second-degree arson instead of third-degree arson.  The point Makas fails to grasp is that irrespective of the crime to which he pled NRRMDD, he was committed and thereafter retained because it was determined that he suffers from a dangerous mental disorder, *i.e.*, he presents a risk of danger to himself or others as a result of a mental illness.  He will be discharged from custody  at such time as a court determines under applicable New York law that he no longer suffers from a dangerous mental disorder, is no longer mentally ill, and discharge is consistent with public safety and community welfare and in the interests of Makas.[30]   This is an indefinite term and, conceivably,

---

[29] Through most of his pleadings Makas seems to argue that he could only have been convicted of third-degree arson.  At one point he contends that the only crime he could have been convicted of was fourth-degree arson .  Since it is clear that a jury could have convicted Makas of second-degree arson it is not necessary to compare the elements of third- and fourth-degree arson.

[30] New York Law provides a three-step reduction in commitment and supervision of a track one patient.  Makas must be transferred from a secure to a non-secure facility on petition of the Commissioner if the court finds that Makas no longer has a dangerous mental disorder. N.Y. CRIM. PROC. LAW § 330.20(11).  Makas must be released on petition of the Commissioner if the Court finds that Makas not only no longer has a dangerous mental disorder but is no longer mentally ill, subject to such conditions as may be reasonably appropriate and necessary. N.Y. CRIM. PROC. LAW § 330.20(12).  Makas will be discharged when the court finds that he has been continuously on out-patient status for three years or more and the court finds he not suffering from a dangerous mental condition or is mentally ill and issuance of a discharge order is consistent with public safety and welfare of the community and Makas. N.Y. CRIM. PROC. LAW § 330.20(13).  In all three the District Attorney bears the burden of establishing by a preponderance of the evidence the existence
(continued...)

could extend for life.[31]  It is clear that any difference between a NRRMDD plea to second-degree or third-degree arson charge does not have any direct effect or continuing impact on Makas' commitment.[32]  Makas may be right that at one time it may have had some psychological impact on future fact finders, but that issue is inadequately briefed and argued by both parties.[33]  The Court need not decide it in any event in determining whether Makas is entitled to relief in this proceeding. Even if the Court were to find in favor of Makas on that issue it would not affect the ultimate outcome because Makas' exposure at future retention and recommitment hearings is a collateral consequence of his plea.

First, as noted above, Makas' continued commitment is dependent upon the continued existence of his mental illness, *i.e.*, he can not be released or discharged until such time as he no longer is mentally ill and a danger to himself or others.  Makas does not challenge the finding that

---

[30](...continued)
and extent of Makas' mental illness and the danger he poses to himself and others as a result of his mental illness.  *See People v. Escobar*, 462 N.E.2d 1171, 1172–73 (N.Y.1984).

[31]  Neither the preponderance of the evidence standard employed by New York nor the fact commitment may be for an indefinite term that may extend beyond the maximum term for which Makas could be incarcerated if convicted constitute a constitutional due process violation.  *See Jones v. United States*, 463 U.S. 354 (1983).

[32]  In his appeal from the commitment hearings, it is apparent that the nature of the crime was considered.  In its oral decision on the first retention hearing, the Orange County Court clearly referred to the serious nature of the crime that brought Makas before the Court—"a class D violent felony."  On appeal, counsel for Makas argued that undue emphasis was placed on the nature of the crime and presented the factual basis of the crime as admitted by Makas in his plea allocution.

[33]  Makas misunderstands the nature of retention hearings under New York law.  Clearly someone in track 1 suffers burdens that initially are not placed on those in track 2 or track 3 although given a proper factual predicate someone in the latter classes may be recommitted to track 1.  Makas' error is in assuming that someone who pleads NRRMDD to Arson in the second degree is automatically placed in track 1 and someone who pleads NRRMDD to Arson in the third or fourth degree is automatically placed in track 2 or track 3.  There is nothing automatic about it.  The Court has reviewed the decision of the New York Court of Appeals cited by Makas, *Matter of George L.*, 648 N.E.2d 475, 480 (N.Y.1995), and, at best, finds it of questionable support for his position.  Makas isolates a single statement by the court somewhat out of context, in particular that the court referred to the close proximity in time of the violent act to the commitment hearing, *i.e.*, it was not so remote in time as to be devoid of any evidentiary value.  In addition the act of violence in *George L.* was attempted murder.  Makas' current commitment is based upon his current mental health and the danger, if any, his mental health poses to himself and the community.  The events of 1998 are no longer in close proximity. See the extensive discussion of an evidentiary basis for successive retentions of track 2 acquittees in *Matter of David B.*, 766 N.E.2d 565 (N.Y. 2002).

he is mentally ill.  The record at the retention hearings established that Makas is dangerous to himself and others.  The only impact that the finding of "dangerous mental disorder" has is on the degree of confinement, *i.e.*, secure versus non-secure mental facility and the extent of supervision.  Thus, whether he was initially factually guilty of second-degree or only third-degree arson, even if relevant to and considered in the initial determination of dangerous mental condition, does not control  the question of when Makas may be released or discharged from commitment.  Under New York law a NRRMDD acquittee who is retained after his second retention hearing will have a further hearing in two years at which time Makas may contest his track status and, if dissatisfied, seek leave to appeal. See *Matter of Jamie R. Consilvio*, 844 N.E.2d 285, 291 n.8 (N.Y. 2006).

Second, Makas has presented no evidence that at any retention hearing, other than the initial commitment hearing, the difference in the degree of arson was even considered, let alone dispositive. In fact, in affirming the first retention order and the order affirming the initial commitment, the Appellate Division in *In re Timothy M., supra*, in upholding the Orange County Court specifically held:

> Although conflicting evidence as to Timothy M.'s mental condition was presented at the October 2001 hearing, the Supreme Court's finding that Timothy M. remained dangerous and in need of secure confinement is supported by the testimony of his attending psychiatrist, a report of the Forensic Committee of the Mid Hudson Psychiatric Center, and the Supreme Court's observation of Timothy M.'s demeanor. Under these circumstances, we find no basis to disturb the Supreme Court's determination that Timothy M. continues to suffer from a dangerous mental disorder requiring his commitment and retention in a secure psychiatric facility.

It is clear  that  the Appellate Division did not view the fact that the crime involved was second-degree rather than third-degree arson was of particular significance.  In short, it was the other evidence that was determinative of whether Makas continued to suffer from a dangerous mental disorder requiring his commitment and retention in a secure psychiatric facility, not whether the NRRMDD plea was to Arson in the second-degree or third-degree.

Third, as discussed further below, the critical issue, which the New York courts consider forfeited, is whether the facts to which he admitted in his plea allocution, as supplemented by the prosecutor's proffer, constitute second-degree arson, the crime for which he was found not criminally responsible by reason of mental defect or illness.  In rejecting Makas' argument, the Ulster County Court held:

Defendant's arguments on this motion are both contradictory and perplexing. On the one hand he states, "Although the defendant does not contest the mental illness aspect, he does contest what crimes were done." The central theme of his argument appears to be that there is a distinction between Arson in the Second Degree and Arson in the Third Degree and that the facts adduced by at the plea only establish that he committed Arson in the Third Degree with respect to Count One of the indictment. At no time does the defendant profess his innocence. This argument seems to be centered on defendant's belief that somehow, his commission of Arson in the Second Degree would result in confinement in a psychiatric hospital twelve years or more as opposed to twelve years in prison.

These arguments are completely without merit, for the resolution of the case was, in fact, favorable to the defendant in that defendant was found not criminally liable for his acts.

In the context of the above arguments, defendant alleges that counsel was ineffective (in allowing him to plead to Arson in the Second Degree) and that counsel pressured defendant to enter the plea, and that if he had not entered such a plea the result would have been different (and better for the defendant). Further that defendant's plea was not voluntary in that he still had a mental disease or defect at the time of the plea and was not advised that he was pleading to all three counts of the indictment.

A careful review of the plea proceedings indicates that each and every requirement of Criminal Procedure law §220.15 was at a minimum, followed to the letter. In particular and to the extent raised on this motion, not only did the People make an offer of proof which satisfied the Court that the People would establish each element of the of three offenses charged, but defense counsel conceded the same. Further, on inquiry by the Court, the defendant admitted each and every element.

Consistent with CPL §220.15. defense counsel stated that the defendant had the capacity to understand the proceedings, as did the defendant. Additionally, the defendant fully participated in the proceedings and consulted his attorney on a number of occasions. Defense counsel also stated to the Court that the defense of not responsible by reason of mental disease or defect was, in fact, the only viable defense available to the defendant. The Court concurred in this opinion, particularly in view of the failure of the defendant at any time, including on the instant motion, to deny that he set fires alleged in the indictment, and, in fact, admitted setting those fires. The Court was and remains convinced that the defendant's plea was voluntarily given.

Nor is there any suggestion in the record that defendant was denied the effective assistance of counsel. Not only did defendant receive "meaningful representation" People v Benevento, 91 NY2d 708 (1998), but, in the Court's view, defendant received excellent representation.

Given the deferential treatment that this Court must give to the findings of the Ulster County Court, Makas has failed to establish either inadequate performance by counsel or prejudice, the necessary prerequisites to satisfy the *Strickland-Hill* test.  In the context of a plea, counsel has an obligation to explain the direct consequences of entering a plea to the extent necessary to permit the defendant to make an informed decision.  *See Purdy v. United States*, 208 F.3d 41, 45 (2d Cir.2000). Simply because counsel does not advise a client of all the collateral consequences that result from the entry of a plea does not render representation constitutionally inadequate.[34]   In this case, accepting as true Makas's assertion that he was misinformed as to the consequences of admitting factual guilt to second-degree arson to be true, it was of minimal consequence, *i.e.*, it was not a crucial aspect nor did it present a major risk. *Cf. Davis v. Greiner*, 428 F.3d 81, 90 (2d Cir.2005). Makas' *post hoc* assertion that he would not have entered an insanity plea to second-degree arson, as discussed further below, is not determinative.  *Pannucio v. Kelly*, 927 F.2d 106, 109-111 (2d Cir.1991).  As the *Hill* court cautions, in determining whether a plea would have been entered had counsel been effective, courts must ignore subjective complaints and view the issue objectively.  In so doing a court must consider the weight of the evidence and the likely impact of the alleged errors on a reasonably prudent person's decision to plead.  *See Hill* 474 U.S. at 59-60.  Here there is very little, if any, likelihood, let alone a reasonable probability, that the ultimate outcome would have been more favorable had Makas gone to trial.  The New York court's implicit finding that Makas would have entered the same plea had he understood the true relationship between the crime to which he interposed his plea and the ultimate duration of his commitment is not clearly erroneous, let alone unreasonable.  Based upon the record, this Court can not say that the decision of the Ulster County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Makas' case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was

---

[34]  Of course, if counsel affirmatively makes material misrepresentations about a collateral consequence important to a defendant and the defendant in reliance on the misinformation enters a plea he would not have entered had he had correct information, he is entitled to relief.  But the alleged misrepresentation in this case was neither false nor material.

more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Makas is not entitled to relief under his second ground.

**C.  The facts did not fit the crime for which he was charged (implicitly ineffective counsel) (Third Ground)**.

Turning to his third ground, that the facts do not fit the crime (and his "implicitly ineffective counsel" claim), initially the Court notes that due process does not mandate an inquiry by the state court into the factual basis of a plea. *See Willbright v. Smith*, 745 F.2d at 780-81 (discussing the requisites for a voluntary plea).  Makas asserts four factual bases, all related to the plea colloquy. To establish guilt of second-degree arson, the people must establish five elements: 1) Defendant intentionally started a fire; 2) Defendant acted with intent to damage a building; 3) Another person, not a participant, is present in the building; 4) Defendant knew that facts or circumstances were such as to render the presence of such person therein a reasonable possibility; and 5) Damage to the building was actually caused. *See* 6 RICHARD A. GREENBERG, N.Y. PRAC., CRIM. LAW, § 11:5, citing *People v. Torres*, 417 N.Y.S.2d 575, 580 (N.Y. Crim. Ct.1978).

In his allocution at the plea hearing, to the extent it bears on the second-degree arson charge, Makas testified as follows:[35/]

> THE COURT: I h ave watched you listen and am I correct in my opinion that you were listing carefully to Mr. Nneji, Mr. Makas?
>
> THE DEFENDANT:  Yes, I was.
>
> THE COURT: And did you follow along with respect to each and every statement he made about the facts underlying this indictment that he would attempt to prove at trial?
>
> THE DEFENDANT: Yes. I followed along with what he attempted to prove.
>
> THE COURT: And not withstanding that, are you saying in spite of the defense of not responsible by reason of mental disease or defect his recitation of what the proof would be at trial and proven beyond a reasonable doubt is correct in all respects?
>
> THE DEFENDANT: The facts that he stated seemed correct more or less, yes.
>
> MR. SCHLENKER: May I add one thing, Your Honor. I think in terms of forensic, although we assume this by virtue of the factual recitation of the Ulster

---

[35/] Makas has not alleged that any fact to which he testified to in his allocution is incorrect.

County Arson Task Force extensive investigation of this fire and will doubt any possibility of fire occurring other than by arson . I have also reviewed those reports, submitted those to an expert with respect to potential defenses and there is no reason to contradict this fire or these fires were in fact caused by arson and these are based on sound forensic evidence.

THE COURT: You agree, Mr. Makas?

THE DEFENDANT: Yes.

THE COURT: So to put it simply, the People's allegations as I understand it, you agree that on or about the 9th of May 1998 that you owned property at 103 Summit Avenue in Hurley consisting of two residential units, one rented to the McKeighan family and the other to Danielle Furman, correct ?

THE DEFENDANT: Correct .

THE COURT: That you also owned the home in which you lived at 12 DeWitt Mills Road in Hurley, correct?

THE DEFENDANT: Correct, yes .

THE COURT: Now, the McKeighans were home and in that building on that day sleeping, correct?

THE DEFENDANT: Correct.

THE COURT: And that Miss Furman had previously entered into an agreement with you in which she had begun making payments on the rent on account of the agreement to rent her the second rental unit at 103 Summit Avenue, correct?

THE DEFENDANT: She had made the initial deposit.

THE COURT: And that having made that initial deposit there was at least the possibility that she was within that home on May 9th?

THE DEFENDANT: Her lease was supposed to start June 1st.

THE COURT: Well, whether or not her lease was to start on June 1st, July 1st, May 1st, given the fact that you did enter into an agreement with her, she did make a payment to you on account of that agreement, was there not a reasonable possibility that she would have been present within that building on May 9th of 1998?

THE DEFENDANT: Yes, she had access to the place.

MR. SCHLENKER: She had a key to the premises.

THE COURT: You agree, Mr. Makas?

THE DEFENDANT: Yes.

MR. NNEJI: Your Honor, she had actually moved in some of her personal property.

THE COURT: You agree with that?

THE DEFENDANT: No.

THE COURT: What is your offer of proof, Mr. Nneji?

MR. NNEJI: In fact he did pay restitution to her for her personal property that was damaged in the place.

THE COURT: Mr. Makas, do you agree?

THE DEFENDANT: I paid an amount to settle her case due to the —

THE COURT: Let me put it this way, Mr. Makas. Take your time. If you don't understand me, say so. I don't always speak clearly. My questions aren't always phrased in the best manner. She gave you money on account of the rental agreement prior to May 9th, correct?

THE DEFENDANT: Yes.

THE COURT: Of 1998, correct?

THE DEFENDANT: May 1998, correct .

THE COURT: You gave her a key?

THE DEFENDANT: Yes.

THE COURT: And whether or not she had actually moved personal property in there, by giving her the key you at least implicitly permitted her to do so, correct?

THE DEFENDANT: Yes.

THE COURT: And by having at least implicitly permitted her to do so, do you recognize that there was a reasonable possibility, whether or not she was there or not, you recognized there was a reasonable possibility she would have been there on May 9th?

THE DEFENDANT: Yes.

THE COURT: You did set fire to that building?

THE DEFENDANT: Yes.

THE COURT: And when you did so the second rental unit was damaged as a result of your having set fire to the Furman building?

THE DEFENDANT: It was damaged by smoke as far as I could tell, yes.

MR. NNEJI : Your Honor said it was damaged by smoke. That is in fact not the case. It was burned, the roof—

THE COURT: Well, no, we are talking about two difference [*sic*] things, the Furman unit was damaged by fire, correct, Mr. Makas?

THE DEFENDANT: Yes.

THE COURT: And it was burned quite extensively, correct?

THE DEFENDANT: It was burned a fair amount, yes.

THE COURT: But the second unit, the one occupied by the McKeighans, was damaged as a result of the fire you set, correct?

THE DEFENDANT: I am told there was smoke damage, yes.

THE COURT: Whatever the damage was, whether or not smoke or something else, it was at least damaged as a result of the fire that you had set?

THE DEFENDANT: Yes.

THE COURT: And these two rental units were related to one another such that by starting a fire in one, were that fire to go on, have gone unchecked, the second unit would have burned as well; is that correct?

THE DEFENDANT: It's possible.

THE COURT: Well, is it more than possible  I mean, as I understand it they are connected if not – if they are not actually one unit they are connected by a structure between them, correct?

THE DEFENDANT: Yes.

THE COURT: How would you describe that structure between them, Mr. Makas?

THE DEFENDANT: Glass-sided – breezeway with a wooden top.

THE COURT: And were, the fire in the Furman rental unit to have gone unabated, in all likelihood at least the wooden portion of that breezeway would have ignited which in turn would have ignited the McKeighan unit, correct?

THE DEFENDANT: It's possible, yes.

THE COURT: You knew that on May 9th, correct?

MR. SCHLENKER: He had full knowledge of the structure.

THE COURT: Is that true, Mr. Makas?

THE DEFENDANT: I knew what the structure was like.

THE COURT: So did you know that by setting fire to one the other one would burn?

THE DEFENDANT: Would, could have.

THE COURT: Did you know that, Mr. Makas?

THE DEFENDANT: Yes.

THE COURT: And you still set that fire in the Furman home, you set that fire in the Furman home knowing that?

THE DEFENDANT: Yes.

Applying the colloquy to the four factual bases asserted in the petition we can determine whether Makas was prejudiced by any baseless concessions his attorney made and by the trial court's failure to inquire more deeply into a factual basis for the NRRMDD plea.

1. *Makas denied there was a fire in the occupied (McKeighan) house, but Schlenker (counsel) conceded there was something about outlets conducting fire and smoke*. In his allocution Makas admitted there was smoke damage to the occupied unit. Assuming that counsel made the alleged concession regarding fire damage to the electrical outlets in unit 2, which is not borne out by the transcript of the plea colloquy,[36/] Makas admitted that there was smoke damage to the occupied unit which is sufficient under New York law. *People v. Fleming,* 560 N.Y.S.2d 50 (N.Y. App. Div. 1990) Thus, Makas' admission negates any possible finding of either prong of the *Strickland-Hill* test: inadequacy or prejudice.

2. *Makas did not say his property was a duplex, but counsel conceded a duplex*. The Court agrees that Makas did not admit that the two units constituted a duplex.[37/] The Court also agrees that during the colloquy counsel referred to the two units as being a duplex.[38/] However, by his own admission, the two units were connected by a covered storage structure and he knew that a fire in the first unoccupied unit could spread to the second occupied unit if left unabated.[39/] Despite this

---

[36/] This statement was made by the prosecutor and repeated by the court. Nothing in the record supports the supposition that Makas' counsel conceded this point any more than did Makas himself.

[37/] Webster's New World Dictionary (3d college ed. 1988) defines "Duplex house" as "a house consisting of two separate family units." Page 422. The prosecutor was prepared to prove that Makas' two units were carried on the county tax records as a single building.

[38/] "At the time this was an inter-connected duplex of two residences where the fire started. One of the issues would have been at trial whether or not this meets the requirement of Arson in the Second Degree." It is clear that counsel was not conceding the one-building argument.

[39/] In addition, although he also referred to the unit as a duplex, the prosecutor accurately described the units as "consist[ing] of two structures connected by a breezeway which is in fact storage space between the two structures. Now this structure is boarded off from one end, from both ends where it connects to the two different structures because it was intended to prevent entrance from one to the other." Makas does not claim that this description, other the use of the term duplex, is inaccurate.

MEMORANDUM DECISION
*Makas v. Bennett*, No. 9:02-cv-00836-JKS                    35

knowledge, Makas admitted he intentionally set unit 1 on fire.  It is clear from the plea colloquy that the court in taking the plea understood that Makas did not agree that the units were a duplex in the context that it constituted one building.  It is also clear that the court did not necessarily view use of the term duplex as conclusive on the units constituting one building.  Thus, even if counsel's reference to the units as constituting a duplex and concession to the prosecutor's statement satisfied the first prong of the *Strickland-Hill* test, which is at best questionable, it failed the second prong — prejudice.

3. *The prosecutor, defense counsel, and the judge put Furman in the unoccupied unit and pressured Makas about it.*  The record does not support a finding that Makas was pressured into admitting anything.  Moreover, he did not admit to, nor is there any indication that he was being pressured to admit, that Furman was present in the building at the time of the fire.  At most, Makas admitted that he recognized there was a reasonable possibility she could have been there.[40]  To the extent Makas is raising an ineffective assistance of counsel claim there is simply no evidence to support either prong of the *Strickland-Hill* test.

4. *Makas did not really agree with the prosecutor's recitation of what the prosecution could prove, he only agreed "more or less."*  Other than describing the property at 103 Summit Avenue as a duplex, Makas does not refer in his papers to any other factual statement made by the prosecution related to the second-degree arson charge with which he did not agree.  At the plea hearing, although he disclosed through counsel that he was not sure the prosecutor could prove second-degree arson, he did not claim innocence.  He did not affirmatively deny any of the elements of second-degree

---

[40] The significance of this admission is not apparent from the record.  By its express terms N.Y. CRIM. LAW § 150.15 governing second-degree arson requires that a person actually be in the building *and* that the defendant either know of that presence or that circumstances render the presence of a person a reasonable possibility.  The fact that there was a reasonable possibility someone was present but in fact no one was present does not establish second-degree arson.  *See* 6 RICHARD A. GREENBERG, N.Y. PRAC., CRIM. LAW, § 11:5.  It is undisputed that Furman was not in the residence at the time of the fire.  In his traverse Makas argues that the discussion regarding Furman impermissibly expanded the allegations of the indictment under New York law.  While this may raise an issue under New York law, it does not rise to the level of a constitutional issue and is, therefore, beyond the purview of this Court in a federal habeas proceeding.  In any event Furman's presence at the time of the arson was not necessary to a determination that Makas was factually guilty of the crime of second-degree arson.  As we have seen, the facts would have permitted his conviction of that offense under two theories.  Of course, given his NRRMDD plea, he was not convicted of arson in any degree.

arson.  As discussed above, the court in accepting the plea did not appear to treat the use of the term duplex as conclusive on the one building issue.  Again, to the extent Makas is raising an ineffective assistance of counsel claim there is simply no evidence to support either prong of the *Strickland-Hill* test.

The true thrust of Makas' third ground is the evidence available to the prosecution was insufficient to establish second-degree arson.  Assuming that this is a stand alone claim, as noted above, the Ulster County Court in deciding his N.Y. CRIM. PROC. LAW § 440.10 motion declined to address that issue because it could have been raised on direct appeal and was not.  It is now axiomatic that in "cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  N.Y. CRIM. PROC. LAW § 440.10(c) is an adequate independent state ground, a default rule established by New York Statute, not a court-created doctrine, is an adequate independent state ground. *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir.2003). *Bennett* establishes that the New York rule is independent and  uniformly applied and is adequate to preclude habeas review. *See Garcia v. Lewis*, 188 F.3d 71 (2d Cir.1999) (discussing the independent and adequate state ground rule).  None of the considerations discussed in *Lee v. Kemna,* 534 U.S. 362 (2001) are present in this case.  A habeas petitioner may avoid  the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime for which he has been convicted. *Schlup v. Delo,* 513 U.S. 298, 321 (1995); *Murray v. Carrier,* 477 U.S. 478, 496 (1986).  Makas was not convicted of second-degree arson or, for that matter, any degree of arson.  Assuming that his commitment hearing is analogous to a non-capital sentencing and that innocence of a sentencing factor is cognizable to avoid a procedural default (*compare Dretke v. Haley*, 541 U.S. 386 (2004) (reserving judgment) *with Spence v. Superintendant, Great Meadow Correctional Facility*, 219 F.3d 162 (2d Cir.2000) (actual innocence exception to procedural default rule applies in non-capital sentencing context when error is related to finding a predicate act forming the basis for enhancement), it is clear that Makas' continued confinement does not depend on the distinction between second-degree and third-degree arson.

Even if it did, the crucial question becomes whether the facts to which Makas admitted or the facts the prosecution was prepared to prove if the case went to trial are sufficient to establish all the elements of second-degree arson under New York law.  The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).

In reversing Makas' conviction on the original guilty plea, the New York Appellate Division held (709 N.Y.S.2d at 653):

> As County Court neither made a finding as a matter of law that defendant's two rental units constituted one building nor elicited an admission to that effect, defendant's responses during the plea allocution failed to establish the elements of arson in the second degree. Specifically, defendant did not admit that he intended to damage an occupied building by setting the fire (*see, People v. Keech,* 121 Misc.2d 368, 371-372, 467 N.Y.S.2d 786), that he actually damaged an occupied building (*cf., People v. Davis,* 89 Misc.2d 535, 392 N.Y.S.2d 195) or that he knew a person was present in the building which he set on fire. Rather than ascertaining that defendant intentionally damaged an occupied building, County Court negated that element when it stated, and defendant confirmed, that defendant had intentionally damaged a building that was not occupied. County Court's acceptance of defendant's guilty plea in these circumstances was error and the conviction must be reversed.

In accepting Makas' NRRMDD plea, the Ulster County Court considered the prosecutor's proffer regarding what he was prepared to prove, Makas' concessions, and Schlenker's statement that 1) he had no defense except NRRMDD and 2) a jury could find guilt beyond reasonable doubt as to each of the charges.  The court then concluded that the prosecutor had made a *prima facie* case as to each of the charges.  The court did not specifically and separately address the elements of second-degree arson though all parties were obviously aware of the result of Makas' first appeal.  While, as Makas correctly argues, he did not expressly admit that the two units constituted one building and the Ulster County Court did not expressly so find,[41] that is not the critical issue before this Court.  The critical issue is whether the evidence is sufficient to establish all the essential elements of N.Y. PEN. LAW § 150.15 *as interpreted and applied by New York courts*.  "'[A]ctual innocence' means

---

[41] However, the Ulster County Court necessarily implicitly found that the facts were sufficient to establish the two units constituted one building—a finding that is entitled to AEDPA deference. *See Channer v. Brooks*, 320 F.3d 188, 195 (2d Cir.2003).

factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). In this case disregarding the affirmative defense of NRRMDD,  Makas admittedly was guilty of arson, the only issue being whether it was second-degree or third-degree.  The Court can not say that the Ulster County Court was unreasonable in concluding that the prosecutor had made a *prima facie* case, *i.e.*, that  a rational trier of fact could  have found beyond a reasonable doubt on the basis of the admitted facts (two units connected by a breeze-way) that the two units constituted one building. Indeed, Judge Czaka, the Ulster County Judge who accepted the plea and decided the N.Y. CRIM. PROC. LAW § 440.10 motion, expressly found in deciding the motion that Makas had admitted each and every element of the three offenses of which he was charged.  Makas can not establish actual innocence.

Neither party has specifically addressed the issue of whether the evidence satisfies the "one-building" requirement of N.Y. PEN. LAW § 150.15 as interpreted and applied by the New York courts, and independent research by the Court has not revealed any reported New York decision directly on point.[42]   That determination is not required in order to evaluate the voluntariness of Makas' NRRMDD plea.  *See Willbright v. Smith*, 745 F.2d at 780 (due process does not require that state court inquire into the evidentiary basis for a plea so long as the record demonstrates that the defendant understands the charge and knows what he is doing).  The court has cited the cases most nearly in point.  It is, therefore, an issue that comity dictates should be passed on in the first instance by the state courts, not a federal court in a habeas proceeding.  Moreover, as a stand alone claim it

---

[42] At the plea colloquy Makas acknowledged that if left unabated the natural consequence of setting fire to the unoccupied structure was that the fire would probably have spread to the adjacent occupied structure. Whether that would support a conviction for second degree arson under New York law is unsettled. *Compare People v. Davis*, 392 N.Y.S.2d 195, 197 (N.Y. Sup. Ct.1977) (holding that where defendant was accused of setting fire to uninhabited building, which fire spread to adjacent inhabited building, such occurrence was foreseeable consequence of original act without any supervening cause, and defendant could properly be charged with arson in second degree) *with People v. Keech*, 467 N.Y.S.2d 786, 788-89 (N.Y. Sup. Ct.1983) (declining to follow *Davis*, held that an indictment that failed to allege an intent to damage an adjacent occupied building was deficient).  *See also People v. Torres*, 417 N.Y.S.2d at 579 (holding that leaving live fire burning on wooden floor of basement in close proximity to papers and other readily combustible objects, taking no measures to contain fire or to extinguish it, was sufficient to establish that defendants acted with intent to damage building); 1 HOWARD G. LEVENTHAL, CHARGES TO JURY AND REQUESTS TO CHARGE IN CRIM. CASE IN N.Y., § 9.9 (incorporating *Davis*).

presents solely a question of state law, not one involving the federal Constitution, and appears to have been forfeited.[43]

Makas is not entitled to relief under his third count.

The Court notes that in his traverse Makas alleges numerous points that he contends made his plea involuntary. Particularly, that he was not informed of all the consequences of entering a plea of not responsible by reason of mental illness or defect, *e.g.*, that he would be pleading to the crimes in the indictment and that at future transfer/release/retention hearings the district attorney or state attorney general could appear and contest him. These assertions, which relate to collateral consequences of the plea, are not supported by the record nor were they presented to the state courts and exhausted.

At the outset of the plea colloquy, the prosecutor stated (emphasis added): "Your honor, at this time we are prepared to proceed to recommend to the Court to accept *a plea by the defendant to each and every count of indictment* of not guilty by reason of mental disease or defect." At the plea colloquy Makas was informed by the court that a jury could find him not guilty of any crime and he would go free. Makas was also advised by the court that the jury could find him guilty of the crimes charged in the indictment and in that event Makas could be sentenced to prison for a term of up to 47 years. Further, the court advised defendant that the jury could also find him not guilty by reason of mental disease or defect. All of which Makas affirmatively signified he understood. Finally, the court advised him that by entering a plea of not responsible by reason of mental disease or defect he would waive a right to trial to which Makas responded he did so freely and voluntarily. The record also shows that the court advised Makas that in the hearing on whether Makas had a dangerous

---

[43] Of course this Court has no way of knowing what a jury would have done with this case if it had gone to trial. Nor does the Court know what the New York Court of Appeals would have decided regarding whether the rental units were one building or two. Certainly the facts would have been developed to a much greater extent at a trial than they could be during a plea hearing. But that is a two edged sword. A more complete factual development could work against Makas by making his conduct appear more dangerous rather than less. The point made in this decision is that a jury could have found Makas guilty beyond a reasonable doubt on the undisputed facts and rejected any affirmative defense except NRRMDD. With that conclusion in mind the Court has determined that in light of the whole record Makas would have entered the same plea at the same time had he known the true law and the true facts. Any protestations Makas currently makes are simply pleader's remorse. Parties enter pleas to avoid the uncertain results of jury trials and appellate review. It is clear that is what Makas did here.

mental disorder or that he was mentally ill the district attorney would have the burden of satisfying the court of that condition and, if the court found he had a dangerous mental disorder, Makas would be committed. Makas also affirmatively signified he understood that. In summary, Makas entered his plea after consultation with counsel who assured the court that he had fully explained the plea and its consequences to Makas. Makas knew the elements of Arson in the second degree and that he was admitting factual guilt to that offense. After discussing the elements of Arson in the second degree in an off-the-record conference with counsel, Makas assured the court that his questions had been answered, that he had not been threatened, and that he wished to go forward with the plea. He never specifically denied any element of Arson in the second degree. Under these circumstances his plea was voluntary despite any dispute about the definition of buildings he may have had with the prosecutor. *See Panuccio v. Kelly*, 927 F.2d at 110-112.

He further asserted in his traverse, as he did in his N.Y. CRIM. PROC. LAW § 440.10 motion in the Ulster County Court, that Schlenker threatened to walk out on him if he made waves and did not accede to the NRRMDD plea. However, the transcript of the plea colloquy clearly shows that, subsequent to his last off-the-record discussion with counsel, Makas affirmatively stated on the record that his concerns were satisfied, he would proceed based upon counsel's advice, and that he had not been threatened or forced in any way to enter the NRRMDD plea.[44]

The record establishes the Makas was made aware of the direct consequences of his plea and was not the victim of misinformation from his counsel. Makas' *post hoc* claims that he did not understand and was coerced are conclusively negated by the record. *See Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) ("[T]he representations of [a] defendant at [a plea] hearing · · · constitute a

---

[44] The record does not reflect that Makas ever sought an evidentiary hearing in state court to determine whether counsel had threatened him in order to induce a plea. Counsel was retained and there is nothing in the record to show that Makas sought time to substitute counsel. Also, the alleged statement is ambiguous. It might mean that counsel would abandon Makas unless Makas pled but it could also mean that if Makas made waves the court would not accept a plea and the case would have to proceed to trial. The latter interpretation is consistent with Makas' further comment that he did not make waves because he believed that pleading to Arson in the second degree would not affect future retention hearings. The Court has therefore treated Makas' claim as one of misrepresentation rather than coercion and for the reasons set out in the text of this decision concluded that it really does not matter under the provisions of N.Y. CRIM. PROC. LAW § 330.20 whether one pleads NRRMDD to Arson in the second degree or Arson in the third degree on undisputed facts similar to those present in this case.

formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."); *Adames v. United States*, 171 F.3d 728, 732 (2d Cir.1999) (same).

There being no basis upon which relief may be granted, the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)); *Love v. McCray*, 413 F.3d 192 (2d Cir.2005) (same).  The closest U.S. Supreme Court case is *Hill v. Lockhart, supra*.  No more recent decision of the Supreme Court supports any of Makas' contentions.  It is clear that his counsel did not misinform him regarding any of the consequences of a NRRMDD plea and that the consequences of which Makas complains—his assignment to track 1 at the commitment hearing is a collateral consequence of his plea under existing law since track status depends on the exercise of discretion and is not an automatic result of any particular crime to which a NRRMDD plea is entered.  To the extent the issues raised in the petition were addressed by the Ulster County Court in its decision and are therefore exhausted  no reasonable jurist could find that the decision was "objectively unreasonable."

That said the Court is aware that no decision of the United States Supreme Court cited by the parties or a part of this Court's independent research specifically addresses the record necessary to show a voluntary and intelligent insanity plea.  No case discusses which consequences of an insanity plea are direct and which collateral.  The closest cases this Court has found are *Godinex v. Moran*, 509 U.S. 389 (1993) and *Henderson v. Morgan,* 426 U.S. 637 (1976).  Neither case compels a decision different than those reached by the courts of New York in Makas' case.

If Makas wishes to appeal this adverse decision, he must directly approach the Second Circuit Court of Appeals and seek a Certificate of Appealability from that court.  He must do so within the time allowed to appeal this order.  Makas may at that time seek appointment of counsel from the Second Circuit Court of Appeals.

The Clerk of the Court shall enter final judgment accordingly.

Dated: June 7, 2007.

s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge